IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| WALTER BRIAN BILBRO,<br><br>Plaintiff,<br><br>vs.<br><br>Nikki Randhawa Haley, Governor<br>South Carolina Office of Governor<br><br>Susan Alford, Director<br>South Carolina Department of Social Service<br><br>Mark Hammond, Secretary<br>South Carolina Secretary of State<br><br>Dorothy Addison, Director<br>Refugee Resettlement Plan<br><br>Curtis M. Loftis, Jr., State Treasurer<br>South Carolina State Treasurer<br><br>Mark Keel, Chief<br>South Carolina Law Enforcement Division<br>(SLED)<br><br>Colonel Michael Oliver, Commander<br>South Carolina Highway Patrol (SCHP)<br><br>Leroy Smith , Director<br>South Carolina Department of Public Safety<br><br>Catherine Heigel, Director<br>South Carolina Department of Health<br>Environmental Control (SCDHEC)<br><br>Richard Eckstrom, Comptroller<br>South Carolina Office of Comptroller<br>General<br><br>Molly Spearman, State Superintendent<br>South Carolina Department of Education | Civil Action No. 3:16-cv-767<br><br><br>**AMENDED<br>VERIFIED COMPLAINT<br>TO CEASE AND DECLARE<br>VOID TO THE DIRECTIVES<br>AND STATE PLAN AND<br>STATE AND FEDERAL<br>REFUGEE PROGRAM<br>AND OTHER<br>DIRECTIVES AS DAPA, DACA<br>FOR INJUNCTIVE AND<br>EQUITABLE RELIEF AND<br>WRIT OF MANDAMUS TO<br>BARACK HUSSEIN OBAMA<br>FEDERAL AGENCIES NAMED<br>AND THEIR EMPLOYEES<br>NIKKI RANDHAWA HALEY<br>SCDSS, SLED, SCHP, SCDPS,<br>SCSS, RRP, SCDHEC<br>SC COMPTROLLER GENERAL<br>SUPERINTENDANT<br>OF EDUCATION<br>AND STATE AGENCIES<br>NAMED HEREIN<br>AND THEIR EMPLOYEES<br>LUTERAN SERVICES CAROLINAS<br>WORLD RELIEF SPARTANBURG<br>WORLD RELIEF CORPORATION OF<br>NATIONAL ASSOCIATION OF<br>EVANGELICALS<br>LUTHERAN WORLD RELIEF** |

1

South Carolina Superintendent of Education    )
                                              )
Ted Goins, President                          )
Lutheran Services Carolinas                   )
                                              )
Jason Lee, Director                           )
World Relief Spartanburg                      )
                                              )
Tim Breene, CEO                               )
World Relief Corporation of National          )
Association of Evangelicals                   )
                                              )
Ambassador Daniel V. Speckhard, President     )
and CEO                                       )
Lutheran World Relief                         )
                                              )
All Name Variations as filed                  )
UNITED STATES OF AMERICA                      )
                                              )
Barack Hussein Obama, President               )
Chief Executive Officer                       )
Executive Office of the United States of      )
America                                       )
                                              )
Jeh Johnson, Secretary                        )
U.S. Department of Homeland Security and      )
its subordinate agencies                      )
                                              )
Gil Kerlikowske, Commissioner                 )
U.S. Department of Customs and Border         )
Protection and its subordinate agencies       )
                                              )
Leon Rodriguez, Director                      )
U.S. Citizenship and Immigration Services     )
and its subordinate agencies                  )
                                              )
Ronald D. Vitiello, Deputy Chief, Border      )
Patrol                                        )
U.S. Department of Customs and Border         )
Protection and its subordinate agencies       )
                                              )
Thomas S. Winkowski, Acting Director          )
U.S. Department of Immigration and            )
Customs Enforcement and its subordinate       )
agencies                                      )
                                              )
Loretta Lynch, Attorney General               )
U.S. Department of Justice and its            )
subordinate agencies                          )
                                              )
Anne C. Richard Assistant Secretary of State  )
for Population, Refugees, and Migration and   )
its subordinate agencies                      )
                                              )

2

Jacob J. Lew                                    )
U.S. Department of Treasury and its             )
subordinate agencies                            )
                                                )
                              Defendants,   )

NOW COMES THE PLAINTIFF and states as follows that he has standing to bring this lawsuit and he is informed and believes this Court has Jurisdiction over the Parties and the Subject Matters herein:

PARTIES

1. The Plaintiff, Walter Brian Bilbro is a resident of Richland County, South Carolina and a taxpayer, property owner and a citizen of the State of South Carolina and currently Richland County, United States of America.   He has resided in South Carolina for 43 years and is a graduate of the University of South Carolina.   He is married and has two children who attend the Public Schools of South Carolina.

2. He is informed and believes that he has standing to bring this action as an interested citizen and taxpayer who has a substantial interest including the state and federal tax programs dealing with immigration and refugee resettlement and the funding of state programs, to-wit, including but not limited to:   Police protection and enforcement, safety of the state's residents and the properties of its citizens, licensing programs, effecting South Carolina Driver's Licenses, Public Health and welfare programs to protect the citizens from being exposed to contagious diseases and the construction and maintenance of sanitation facilities, fire departments, EMS and sewage departments and water departments to control the disposition of human and animal waste in a safe manner, landfills and trash dumps and Public Education.

3. These actions and lack of actions by the two Executives, first The President of America,

second for the State of South Carolina office of Governor have had a direct causation and impact on the Plaintiff's contributions to all the above-mentioned services, including, Public Safety, Public Education and Public Health and sanitation as a direct result of the INA, DACA and DAPA programs and directives of the Federal Government, which have changed the dynamics of the immigration program of the United States and the State of South Carolina on Walter Brian Bilbro and his family.

4. Furthermore as a direct result of Office of Refugee Resettlement (ORR) entering into the SC refugee State Plan and sending directives to the South Carolina Family Courts without the same being run through the SC Legislature, the SC Budget and Control Board, the Comptroller General's Office and the State Treasurer; results in the State Plan being arbitrary and capricious and unconstitutional under the Constitution of the State of South Carolina and the S.C. Constitution.

5. Defendant Nikki R. Haley, Governor of South Carolina; the Chief Magistrate of South Carolina, who is elected to faithfully execute and enforce the laws of the State of South Carolina. http://www.governor.sc.gov   (Hereinafter Governor Haley);

6. Defendant Susan Alford South Carolina Department of Social Services, a state agency directed by the Governor, in general for certain welfare and social services in the state https://dss.sc.gov/  and Defendant Dorothy Addison Director of the "State Plan" to oversee refugee resettlement in South Carolina (hereinafter SCDSS) https://dss.sc.gov/content/customers/finance/rrp.aspx ;

7. Defendant Mark Keel South Carolina Law Enforcement (SLED);

8. Defendant Catherine Heigel South Carolina Department of Health and Environmental Control (SCDHEC) ;

9. Defendant Richard Eckstrom South Carolina Office of Comptroller General, http://www.cg.sc.gov/Pages/default.aspx ;

10. Defendant Molly Spearman South Carolina Department of Education http://ed.sc.gov/

11. Defendant Tim Breene World Relief of National Evangelicals is a "Non-profit" "religious corporation, which receives substantial funds from USA and South Carolina in contractual agreements with SCDSS and through other vendors in the very lucrative business of "refugee-resettlement.

12. Defendant Ambassador Daniel V. Speckhard Lutheran World Relief is a "Non–profit" "religious corporation" funded by the Government and in contractual agreements with SCDSS and other vendors in the very lucrative business of "refugee-resettlement. There variations of the names Upon information and belief, there are variations of the names World Relief filed with the South Carolina Secretary of State http://www.scsos.com/ to do the business of "refugee resettlement", including "Lutheran World Relief," World Relief Corp (Hereinafter "World Relief").

13. Upon information and belief, World Relief Spartanburg is an "unincorporated association" in South Carolina engaging in "refugee resettlement" under the SC State Plan along with other agencies named herein. http://worldreliefspartanburg.org/

14. Defendant Ted Goins Lutheran Services Carolinas is a "Non–profit" "religious corporation" funded by the Government and in contractual agreements with SCDSS and other vendors in the very lucrative business of "refugee-resettlement. There variations of the names Lutheran Services Carolinas filed with the Secretary of State for South Carolina in the business of refugee resettlement" which appears to be possibly over 10 slightly different name variations of LSC. (Hereinafter LSC) http://www.scsos.com/

15. Defendant Richard Eckstrom Comptroller General for South Carolina http://www.cg.sc.gov/

16. Defendant Curtis Loftis State Treasurer of South Carolina, http://treasurer.sc.gov/

17. Defendant Jeh Johnson Director of Department of Homeland Security  https://www.dhs.gov/

18. Defendant, Gil Kerlikowske, Commissioner of U.S. Customs and Border Protection https://www.cbp.gov/

19. Defendant Ronald D. Vitiello, Deputy Chief of U.S. Border    Patrol,  U.S.  Customs  and Border Protection

20. Defendant Leon Rodriguez, Director of U.S. Citizenship and Immigration Services, https://www.us-immigration.com/?referrer=bing-cpc-52167524-us%20citizenship%20and%20immigration~15198561634$m=be-e$g=1771741426-4141230363&utm_source=bing&utm_medium=cpc&utm_campaign=Citizenship%20-%20SRCH&utm_term=us%20citizenship%20and%20immigration&utm_content=us%20citizenship%20and%20immigration

21. Anne C. Richard Assistant Secretary of State for Population, Refugees, and Migration https://www.state.gov/secretary/

22. President Barrack Hussein Obama the President of the United States of America, elected to the Executive Office and subject to the United States Constitution to faithfully "Take Care" that Laws are being executed and enforced as Authorized.  https://www.whitehouse.gov/

**INTRODUCTION**

23. This case was originally filed in State Court on February 12, 2016 along with expert Affidavits, a State Plan for Refugee Resettlement and a Case that came from the Office of Refugee Resettlement (ORR), in Charlotte, North Carolina to Beaufort County Family Court in South Carolina wherein a temporary order was entered into April 2015, with other

supporting documentation.  Also included, as exhibits are Articles of Incorporation of the Defendant Non-Profits, list of "religious charities" on file with the Secretary of State, who are engaged in the business of refugee resettlement in South Carolina.

24. Upon being removed to the Federal District Court in March 2016, by Defendant World Relief other Co-Defendants joined the removal of the case to Federal District Court.   A scheduling hearing was set on May 23, 2016 to schedule all of Motions that had been filed by each party.  The Court was informed at the scheduling hearing that by Consent of the parties that the Plaintiff would retract the Motion to Remand this case to State Court and be permitted until June 20, 2016 to Amend the Complaint add parties and file a Motion for Injunctive Relief and other equitable Relief under the Federal Rules of Procedure and add additional supporting documents and issue writs of Mandamus.  Also, by Consent the Court allowed the Defendants to have until July 18th 2016 to respond.

### BY WAY OF BACKGROUND

25. The State of South Carolina through Governor Haley and its Attorney General joined a lawsuit in December 2014, hereinafter called "The Brownsville Lawsuit" *Texas vs. United States, (2015)* with Texas as a Co-Plaintiff against the United States Government and its agencies and employees.  "The Brownsville Lawsuit" will be cited and relied on in this case at hand for causes of action and similar relief.   Exhibit 1.  Court Orders in Brownsville Case

26. Upon information there exist some distinguishing characteristics, because of recent issues and events, that have occurred since the filing of Brownsville Lawsuit was filed, the substance of our arguments are similar in the abusive overreach of the Executive Branches' Authority of the United States Government and the Office of the Governor of the State of

South Carolina, in certain actions and omissions To Take Care by the Chief Executives of the United States Government and its aforementioned agencies and the State of South Carolina and its aforementioned agencies, such as the failure to take mandatory actions of Public Laws, State Laws and the Federal and State Constitutions, failure to properly and adequately enforce the laws involved in this lawsuit, "rubber-stamping" official legal documents, many times, on information and belief, the documents were blank when signed or rubber stamped.

27. The Plaintiff is informed and believes there was a failure of both executives and the other Defendants named herein to properly vet immigrants and refugees or to keep track of the same after they have been placed in both Federal and State Jurisdictions to enforce the laws and regulations of the Laws of the United States of America and the Laws of the State of South Carolina by the appropriate agencies and government directives. That unilateral suspension or abandonment of the Nation's immigration laws is unlawful. Only this Court's immediate intervention can protect the Plaintiff and his family from damaging and harmful irreparable injuries.

**JURISDICTION AND VENUE**

28. That the Plaintiff is informed and believes that under the totality of all the circumstances in this case, that the Court could in its discretion take into consideration and find that in such cases of important Public interest, the Plaintiff has standing based on an important Public Interest. *Sloan v. Sanford, 357 S.C. 431, 591, SE 2nd 470 (2004) and Sloan v. Greenville Cty. 356 SC 531, 590 SE 2d 338,* Further the Plaintiff is informed that under the Public Importance Exception, standing may be even conferred upon Plaintiff when an issue is of such Public Importance as to require its resolution for future guidance" *Baird v. Charleston*

*City, 333 S.C. 519, 511 SE 2d 69 (1999).*

29. Upon information and belief, Exodus Refugee Immigration, Inc vs Mike Pence case 1:15-cv-01858 set precedent for Standing of a private party to seek redress against the Governor of Indiana.   In this case, the Governor of the State of South Carolina is a Plaintiff in the State of Texas, et al vs United States of America, et al U.S. District Court Southern District of Texas Brownsville District Case B-14-254 opposing the very same issues she is promoting in the Plaintiff's case and the Attorney General should have stepped in to represent the Public Interest, but has not stepped in; likely because of a conflict of interest. Therefore, the Plaintiff has standing to bring this action and to seek redress of these actions and inactions on the part of the Defendants.  This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and § 1343.Venue is proper in this district pursuant to 28 U.S.C. § 1391. Exodus Order Exhibit 2.

30. This action was brought under *42 USC §1983* to redress the deprivation under the color of state law, of rights secured by the Constitution and the laws of the United States; under *Title VI of the Civil Rights Act of 1964*, *42 U. S. C. § 200d* and as a preemption claim brought pursuant to the decision of the United States Supreme Court in *Shaw v. Delta Airlines., 463 U.S. 85, 96 n. 14 (1983)* (holding that a plaintiff presenting a pre-emption claim presents a federal question which the federal courts have jurisdiction under *28 U.S.C. § 1331* to resolve even in the absence of a cause of action under *42 U.S.C. § 1983)* As explained in *Armstrong v. Exceptional Child Cir., Inc.___U.S. , 135 S. Ct. 1378 (2015)* , the courts equitable power to issue injunctions plainly extends to the claims that sound in preemption.  Exodus Immigration v. Pence.

31.  The Plaintiff is informed and believes the Immigration and Nationality (INA) section 235

provides the entry of aliens deemed inadmissible under the INA because, in Broad terms they pose a threat to Public Health, Public Safety, National Security, would likely become public charges or would displace American workers or undermine wages and/or working conditions of American workers. See Affidavit of Michael W. Cutler Exhibit 3. That based on the facts and evidence and recent terrorist Attacks by terrorists on American soil. (Boston Bombings and 9/11 attacks, San Bernardino shootings and 6/12/16 Orlando shootings), the Plaintiff is informed he is in imminent harm and damage should these Directives and Refugee Plans continue.

32. Upon information and belief, The Court has federal question jurisdiction under *28 U.S.C. § 1331* because this action arises under the *S.C. Constitution, art. II, § 3, cl. 5,* and the APA, *5 U.S.C. § 706*. The Court also has jurisdiction under *28 U.S.C. § 1346* because this is a civil action or claim against the United States. Finally, the Court has jurisdiction to compel an officer or employee of the above-named federal agencies to perform his or her duty under *28 U.S.C. § 1361.*

33. Venue is proper in this District under *28 U.S.C. § 1391(e)* because the State of South Carolina is a resident of this judicial district, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District.

34. This Court is authorized to award the requested declaratory and injunctive relief under the *Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202,* the APA, *5 U.S.C. § 706,* and *28 U.S.C. § 1361.*

35. This Court is authorized to award the requested declaratory and injunctive relief under the *Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202,* the APA, *5 U.S.C. § 706,* and *28 U.S.C. § 1361*

36. There's a Staggering Humanitarian Crisis on the US Border, and it's Only Going to get worse. In the Brownsville Case the Plaintiff States alleged that The Executive Branch did not stop at dispensing with the Nation's immigration laws; rather, the District Court found, the Administration adopted a policy that encouraged international child smuggling across the Texas- Mexico border. See Order, *United States v. Nava-Martinez, No. 1:13-cr-00441, at 2 (S.D. Tex. Dec. 13, 2013)* ("Nava-Martinez Order"). The Defendant in Nava-Martinez case, an admitted human trafficker, was caught attempting to smuggle a ten-year-old El Salvadorian girl into the United States. The Court noted that this was "the fourth case with the same factual situation this Court has had in as many weeks." Id. at 3. Although the human traffickers were apprehended in each case, "the DHS completed the criminal conspiracy . . . by delivering the minors to the custody of the parent." Brownsville Lawsuit.

37. The above "criminal conspiracy" was done pursuant to DHS's "apparent policy . . . of completing the criminal mission of individuals who are violating the border security of the United States." Id. at 2. As this Court observed, "[t]his DHS policy is a dangerous course of action." Ibid. Under the policy, "instead of enforcing the laws of the United States, the Government [takes] direct steps to help the individuals who violated it." Id. at 3.

38. Moreover, this Court found that DHS's policy promotes human trafficking, which in turn "help[s] fund the illegal drug cartels which are a very real danger for both citizens of this country and Mexico." Id. at 6. The Court explained that citizens of the United States bear the economic brunt of this policy, because DHS "funds these evil ventures with their tax dollars." Id. at 8. In addition, the policy harms the citizens of each country that suffers from the "nefarious

activities of the cartels." See Brownsville Lawsuit.

39. Upon information and belief, The Defendants'  (in Brownsville Lawsuit) policies (including DACA and the policy described in Nava-Martinez) have had and continue to have dire consequences in the Plaintiff States. In the summer of 2014, an enormous wave of undocumented immigrants surged across the Texas-Mexico border, creating what President Obama described as a "humanitarian crisis." Nick Miroff & Joshua Partlow, Central American Migrants Overwhelm Border Patrol Station in Texas, WASH. POST (Jun. 12, 2014).  As many as 90,000 undocumented children are expected to be detained this year, and as many as 140,000 may be detained in 2015. Brownsville Lawsuit

40.   Upon information and belief, in the Brownsville Lawsuit, Judge Hanen ruled that Texas and South Carolina have standing in the lawsuit.  State of South Carolina has joined as a Plaintiff, because the "Directives" of DAPA and expanded DACA created new classes of individuals state subsidized driver's license, vehicle registration, and voting registration which is coordinated with the driver's license issuance, which imposes additional processing and issuance costs on the State of South Carolina through the United States Government. The Court also held that DAPA , and expanded DACA would impose costs on the states such as for public education and uncompensated medical care for illegals, refuges, asylees and immigrants.

41. The Plaintiff is informed and believes these above-referenced actions and omissions are also taking place in the State of South Carolina, while the Governor on behalf of South Carolina is a party to the Texas Brownsville Lawsuit.

42.  Upon information and belief, in his February 16, 2015 order, Judge Hanen based on the Brownsville Lawsuit's evidence ruled that the government did not comply with certain

technical requirements of the Administrative Procedure Act (APA) of the United States of America including, failure to give required Notice and Comments on rulemaking at the Federal Directives.

43. Upon information and belief, in reaching this conclusion, Judge Hanen found DAPA and expanded DACA to be substantive rules subject to notice-and-comment procedures, rather than general statements of policy. However, as DHS pointed out, the expanded DACA and DAPA initiatives are policies, under which DHS must decide on a case-by-case basis whether to grant a particular individual's request. DHS national procedures for officers who review DACA and DAPA claims to specifically allow prosecutorial discretionary denials. The Government procedures allow for granting or permitting denials and the procedures provide a form with a box permitting denials solely on the basis of discretion—even where eligibility guidelines are met, as well as another box permitting denial, where a requestor "do[es] not warrant a favorable exercise of prosecutorial discretion because of national security or public safety concerns. Judge Hanen ruled that "rubber-stamping" was administrative amnesty and was in essence violation of specific ruling, injunctions and instructions.

44. Regarding the public interest, the Brownsville Court ruled, the cost of issuing drivers' licenses and registering voters for elections and other benefits to prospective deferred action beneficiaries, immigrants (legal and illegal) and refugees to be decisive financial loss to the taxpayer.

45. The Plaintiff, Walter Brian Bilbro, is informed and believes he has Standing as "A Public Interest" citizen and taxpayer to both the United States of America and the State of South Carolina. Public Interest must be allowed as a private citizen to protect the Bilbro family

from the damages caused by these DHS directives and the failure to properly and timely

enforce the immigration laws of the United States of America.  The standing issue was dealt

with settled in the Exodus Immigration v. Pence case where the court held that: "Article III's

limitation of the judicial power to resolving ' Cases' and ' Controversies' ," and the

separation-of-powers principles underlying that limitation, [the Supreme Court] ha[s]

deduced a set of requirements that together make up the 'irreducible constitutional minimum

of standing.'" *Lexmark Intern., Inc. v. Static Control Components, Inc., 134 S. Ct. 1377,*

*1386, 188 L. Ed. 2d 392 (2014)* (quoting *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560,*

*112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).* This constitutional minimum, often referred to

as Article III standing, is jurisdictional. *See Dunnet Bay, 799 F.3d at 688.* "(1) it has

suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent,

not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of

the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Silha v. ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015).*

See Expert Affidavit of Jessica Vaughn Exhibit 4.

46. Upon information and belief, The Government promptly moved for a stay to have Judge

Hanen's orders from being in effect, then made an emergency request of the 5th Circuit

Court of Appeals when Judge Hanen did not rule quickly enough to suit the government.

On May 26, 2015, a divided panel of the Fifth Circuit Court of Appeals denied the request

for an emergency stay of the District Court's preliminary injunction, with the result that the

hold on implementation of DAPA and expanded DACA remained in place while the Fifth

Circuit considered the U.S.A.'s appeal of the preliminary injunction itself and other granted

temporary relief for the Plaintiffs.

47. Upon information on belief, on November 9, 2015, the Fifth Circuit Court of Appeals upheld the District Court's order granting the preliminary injunction. The majority accepted the lower court's findings that Texas and South Carolina has standing to bring this lawsuit based on the additional costs it would incur to issue driver's licenses to beneficiaries of expanded DACA and DAPA.  The court acknowledged that judicial review is unavailable under the APA where a matter is committed to agency discretion and that the government's immigration enforcement priorities fall squarely within this category; nonetheless, the majority also found that the plaintiff states were likely to prevail on their claim that the federal government should have pursued notice-and-comment rulemaking because DAPA and expanded DACA determinations are non-discretionary.  In addition, the majority held that the new  deferred action initiatives are arbitrary and capricious because the federal government did not have authority to promulgate them under the Immigration and Nationality Act (INA).

48. The Majority of the 5th Circuit Court of Appeals also found that the Plaintiffs' States in the Brownsville lawsuit were likely to prevail on their claims.  That the Federal government ignored mandatory comment rulemaking under the APA.   That DAPA and expanded DACA required determinations were not discretionary and did not have prosecutorial discretion, and further held that any deferred actions by government agents were arbitrary and capricious because the federal government did not have the authority to promulgate them under the Immigration and Nationality Act and the federal cases determining the same.

49. The Plaintiff is informed and believes that in early 2014, South Carolina through the Nikki Haley, the Governor of South Carolina and the Attorney General, Alan Wilson, had the State of South Carolina join the Brownsville lawsuit.  She and South Carolina are now bound by

Judge's Hanen's rulings and orders.

50. The Plaintiff is informed and believes that in the Brownsville Court ordered the government to furnish the names of all the illegal aliens who had been granted what is technically "administrative amnesty" by the Executive Office and the federal agencies employees named herein as Defendants, and further ordered that the "rubber-stamped" amnesty documents under expanded DACA and DAPA be withdrawn because these documents were in violation of Judge Hanen's specific rulings, injunctions and instructions.

51. The Plaintiff is informed and believes that all of the current orders of Judge Hanen have now been appealed from the Fifth Circuit Court of Appeals in late May 2016 to the United States Supreme Court by the United States Government and its agencies and employees.

52. Upon information and belief the appeal by the Government to the U.S.Supreme Court, the government has requested an expedited hearing to be heard in late- June or July 2016.  At the writing of this Complaint the Government's request is pending, but is opposed by the Respondent States.

53. Upon information and belief , that during the spring of 2015, the Governor of South Carolina took a position that she would be welcoming refugees into South Carolina, which appeared in statewide newspapers.  (See Exhibit attached news articles quoting Governor of S.C..)   In July 2015 the Legislature passed the new State Budget, however there was no 2016 State Plan Agreement or projections for the legislature to review, pass and fund.   On August 2015 The Governor and the SCDSS entered into what has been called a "proto-type" agreement with the Federal Government and certain vendors and non-profits, "religious corporation" to work jointly on refugee resettlement and the expenditures for them in the State of South Carolina through the SC "state plan." This "proto-type" agreement is in effect

being implemented and applied as State Law, which had no approval of any of the Legislative Finance Committees of the State Budget and Control Board, State Treasurer and Treasurer's office or the SC Legislature's Finance and Appropriations committees, no review by South Carolina Comptroller General's office or placed before South Carolina House and Senate.   See Exhibit of the 8/25/15 Transcript of Assistant Sect of State Ann C. Richards at a private meeting in Spartanburg, South Carolina.

54. The Plaintiff is informed and believes that, accordingly the 2016 State Plan with its refugee action initiatives are arbitrary and capricious, because the Governor and SCDSS did not have Legal Authority to enter into the State Plan or to promulgate the directives, and order different agencies to implement the directives, and the State Plan is not constitutional. " SC Constitution Article 2 Section 3 Accordingly, Plaintiff Walter Brian Bilbro believes he has standing under the law to issue legal challenges to this unlawful and unconstitutional agreement made by of the South Carolina Executive Office and Governor.

55. The Plaintiff is informed and believes that he is entitled to Injunctive relief, Equitable Relief and Immediate Injunction of these programs under Federal Rules of Civil Procedure 57, 65, 66 and A Writ of Mandamus to protect his rights and the rights and of his family.

56. The Plaintiff is informed and believes that on August 25 2015 the Assistant Secretary Of State Ann Richards came to a one hour Spartanburg SC private meeting that had not been noticed as a "Public Meeting" to hear concerns of residents in the area on refugee resettlement.   A Court Reporter took a transcript of the entire meeting and made not of the unanswered questions and concerns.  A Copy of transcript in its entirety is affixed hereto as an Exhibit referenced above.

57. The Plaintiff is informed and believes that after that meeting concerned residents of South

Carolina sent cease and desist letters to elected officials and to the Governor and Assistant Sect of State for Immigration and Population Ann C. Richards to stop this refugee resettlement plan due to the fact that there had been no public notice or public hearings, no impact statements or projections done, no oversight by the Commission of Finance and Budget Control Board. That many local counties were expressing in written resolutions, voted on, and sent to the Governor and state representatives of the Legislature stating that their small communities could not afford a "refugee State plan", for they were already over-taxed and the services and facilities presently existing needed further tax revenues to be improved.

58. The Plaintiff is informed and believes that during the fall of 2015 at least 7 Counties from local South Carolina communities voted on and passed resolutions to not have their communities be part of this refugee plan, and letters went out asking for it to cease and desist until further due process and inspection could be done for the safety, welfare and public health of the residents of South Carolina and the various counties. Exhibit 5.

59. The Plaintiff is informed and believes that on or about Jan 25th 2016 Plaintiff, Walter Brian Bilbro, after study and review went to testify before the subcommittee in the SC Senate. He was given 3 minutes to state his concerns. Over 23 people testified that day for 3 minutes each expressing concerns about this "Program" or "State Plan". There was some reception from a few legislators about the citizens' serious concerns. But, overall it became apparent that enacting legislation would not be a timely solution to an imminent threat.

60. The Plaintiff is informed and believes that the actions of the Chief Executive of South Carolina and the Executive officer of the United States of America go beyond the scope of their respective constitutional powers and represent an enactment of legislation, regulations

and directives which are in conflict with the State and Federal Constitutions and the Code of Laws of the state of South Carolina and the United States Public Laws.  The Executives are acting unconstitutionally and not enforcing the laws of Congress relating to immigration under the INA and its applicable court rulings.  That as far as the State of South Carolina is concerned; the Chief Executive has gone far beyond her constitutional powers granted in the South Carolina Constitution and applicable laws of the State of South Carolina.

61. The Plaintiff is informed and believes that he has a personal stake in the subject matter of this lawsuit. He is informed that he has a real, material, substantial interest in the subject matter of this action. He is informed and believes he has and/or he will sustain immediate damage and harm, be exposed to immediate and dangerous activities, financial suffering due to the imminent threat resulting from the South Carolina State Plan and agreement to implement the Federal Directives and Immigration Programs, as administered through the State of South Carolina and the State Plan, including: Executive Office, DHS, DOJ, ORR and other directives.  These state and federal agencies' plans and directives have an detrimental and prejudicial affect on Plaintiff and his family directly causing irreparable harm and that he has a favorably likelihood of success on the merits of his case.

62. The Plaintiff is informed and believes the failure of the Executive office and its agents to enforce the Immigration Laws and the Court Orders interpreting and enforcing the same to protect our boarders while making unauthorized directives against the Take Care doctrine must be stopped before further harm occurs.   He seeks relief under Rules 57, 65 and 66 of Federal Rules of Civil Procedure, a Writ of Mandamus, and Equitable remedies, Legal Remedies and Injunctive remedies against Barrack Obama as The President of the United States as the Chief Executive Officer of the United States of America, The Attorney General

of the USA as head of Department of Justice, the Cabinet Secretary of DHSS and the head

ORR and over all of the implementation and enforcement of Immigration laws, under the

INA and he is responsible for working with the President to see that such laws and directives

and court orders are enforced by the Executive, the President and the Department of Justice,

Department of Border Patrol and of Customs and Border Protection, Immigration and

Customs Enforcement, and Department of Treasury.

63. The failure of SCDSS, SLED, SCHP, SCDHEC, SC Treasurer Office, Comptroller General

and the Department of Education and all of the agents, employee to review, investigate and

faithfully execute the law has caused Plaintiff damages and imminent harm.

64. The Plaintiff is informed and believes that he has or is in imminent danger of sustaining an

invasion of his legally protected fundamental rights, within the scope of his interest such as,

his right to privacy, his right to be safe and secure in his home, in his person and in his

community, his right for the government and the State to strictly exercise the separation of

powers, his right that The Chief Executive of the Federal and State Governments will "Take

Care" Article 2 Section 3 of US and Article 4 Section 15 of the South Carolina State

Constitution to not to act outside of authority.  See Affidavit of Paul Sutliff, Exhibit 6.

65. The Plaintiff's rights to freedom of speech, freedom to practice his religion, freedom to bear

arms, are fundamental rights.  Under the circumstances, his standard of living and that of his

family's has been and soon will be affected thereby violation his right to live in a safe and

secure community with good sanitation, clean water and food, and free from contagious

diseases that the CDC and immigration officials (70% TB diseases and related respiratory

and digestive diseases referenced more thoroughly in an exhibit attached hereto) has already

warned about and that the injuries and harm will cause irreparable concrete damage.

66. The Plaintiff is informed that the connection between the duty owed by the Government and its actions or inactions not taken by the Government and its agencies is the cause of imminent threats and harms and can be traced through documents and Exhibits filed in this Court Case and the Brownsville Lawsuit.   He is informed and believes that he will have a likelihood of success in his suit and his claims will be redressed by a favorable decision on the merits.

67. That the Plaintiff is informed and believes that the Office of the Governor and Governor Nikki Randhawa Haley has a duty to the taxpaying citizens and residents of the State of South Carolina in accordance with her oath of office to fulfill those duties in accordance with South Carolina Law; She has a duty to faithfully execute the Laws of this State as Governor and Chief Magistrate; Further she has a duty of administering the "Take Care" Clause of the South Carolina Constitution Article 4 Section 15 that the laws be faithfully executed as the Chief magistrate.

68. That the Plaintiff is informed and believes that the South Carolina Department of Social Services (herein after SCDSS) the code sections, setting forth its duties and enforcement powers are governed by the State laws and regulations under the Cabinet leadership of the Governor.

69. Plaintiff is informed and believes that this is a State Agency that has County offices and operates in local communities, and operates in Richland County specifically and throughout the State.   The SC State Plan should be enjoined, restrained, declared void, immediately from settling refugees, in the state until they have been fully vetted and been approved under the Immigration Laws for Security purposes and health purposes and have through projections, impact statements and reviewed by SCDHEC and SLED, SC Comptroller and

the State Treasurer and the State Highway Patrol the SC Comptroller on how it will effect health, safety and welfare and finances of the citizens of South Carolina, especially the Plaintiff.

70. That the Plaintiff is informed and believes that the failure of this program to no meaningful projections on the substantial burden on the taxpayer.  Further the lack of vetting process of these alleged "refuges" is a huge legitimate personal concern for the Plaintiff and concern has the potential for severe and devastating irreparable damage if it does not stop for which there would be no legal remedy that could make up for the damage done by continuing this Program.  If not stopped immediately, he is informed and believes he and his family will incur further damages; that unilateral suspension of the Nation's immigration laws is unlawful.

71. The Plaintiff is informed and believes that only this Court's immediate intervention can protect the Plaintiffs from dramatic and irreparable injuries. The Plaintiff is informed and believes that the evidence will show that The State Program allows for people who may not even actually be properly defined as refugees and some set for deportation and other potentially nefarious criminals or terrorists from abusing this program and causing irreparable harm to the Plaintiff and his family.  See Family Case 15-DR-07-220 as one example; previously marked as an exhibit in this case.

72. The Plaintiff has the expectation that the State funded tax-paying offices and agencies will not enter into funding services that are subversive to the best interest and protection of him and his family.  He is informed that such subversive policy as set forth in the State Plan creates an imminent harm to him and his family.

73. The Plaintiff is informed and believes that the two "religious " Non-profits and the SCDSS

mandate that anyone involved in this program is not to "proselytize". He is informed and believes that this language IS CONTRARY to a legally protected interest that he has to freely share and practice his Christian Religion. He is informed that even the Non-Profits under the directives of the federal Government and the State Plan are not allowed to share the gospel but apparently are willing to pick and choose when this policy applies. This is Arbitrary and Capricious, replete with unlawful and unconstitutional provisions and makes the practice of Plaintiff's own religion restricted.

74. The Plaintiff is informed that these policies and directives affect his personal protected rights and sets up this Program, Government funded mandate and State Plan to be replete with unconstitutional unlawful arbitrary provisions. He is informed that on the merits he has a likelihood of being successful on this issue based on facts and evidence and seeks injunctive relief; See Mandate requiring "No Proselytizing" in Transcript of 8/25/16 Meeting in Spartanburg and the official website of http://www.state.gov/secretary/

75. Upon information and belief, the State projections have not been done adequately or may not even have been done at all, nor have they been relieved by the State Treasurer, State Budget and finance Committee nor the State Comptroller. The state plan allows for a stopping of the plan on Page 4 of the 2016 State Plan that if projections or impact statements have not been completed. This paragraph indicates the Plan should be revised (Stopped) if the "inflow of ethnic composition of "clients" were a significant variance with projections…" take into consideration the inherent potential for this program to resettle potential terrorists or criminals or narco-drug traffickers or those unwilling to assimilate or hostile to the local communities. This remedy still places the state between a rock and a hard place as the state plan must go through the "ORR".

76. The Plaintiff is informed and believes that the lack of investigation and accurate projections based on similarly situated geographical areas by South Carolina and an lack of faithfully implementing and enforcing the Laws of South Carolina to protect and preserve the people has caused and will cause harm and imminent danger to Mr. Bilbro and his family, and the public resources, infrastructure, finances of the State. The implementation of the State Plan is putting the Plaintiff and his personal property at risk for potential imminent harm.

77. The Plaintiff is informed and believes that The 2016 State Plan and the Federal Directives that affect the State of South Carolina as written and administered will overburden the local resources and law enforcement and Public Health and Public Safety, SCDMV, SCDSS, SLED, and local education so as to cause irreparable harm to him and his family by fundamentally changing his local county and community, which, Richland County, SC cannot afford this plan. State funds and county funds will be used at some point the burden will fall mostly on the State of South Carolina. With the possibility of imminent and substantial tax increases for Roads, Infrastructure, Public Schools, Public Health needs, including new hospitals with quarantine facilities to treat large numbers of refugees with communicable diseases and other tax increases to the Plaintiff. See affidavit of Michael Cutler; referenced above.

78. The Plaintiff is informed he is directly harmed by this "Plan" and Directives and it is irreparable to him and the local communities if not presently enjoined. . All it takes is one case of infected immigrants, refugees, DAPA or extended DACA, to infect an entire community and some of these contiguous diseases can permanently damage our citizens' respiratory systems, hearts, kidney and livers. To come into South Carolina where a terror attack happens or his daughter or wife or neighbor got attacked as is happening in many

other locations is Irreparable.

79. Upon information and belief, these are the clear and present dangers that Mr. Bilbro is seeking to prevent and avoid to himself and his family and community by bringing this Court action and asking for the hereinafter-stated remedies. He has a meritorious claim and he has a reasonable legitimate and immediate concern which the Federal Directives, the State Plan and the Lack of proper enforcement of the INA is causing and will cause him in the future the direct damage, he therefore requests a Writ of Mandamus against the Federal Government and the State of South Carolina and its Chief Executive; see Exhibit http://www.scemaonline.org/wp-content/uploads/2012/12/Trends-in-Emerging-Infectious-Diseases.pdf

80. The Plaintiff is informed and believes that the "refuges" coming through the non-profits are in fact mostly from United Nations Refugee Camps in the Middle East where they have resided for 18-24 months or longer according to testimony from the US Asst. Sect of State for Migration and Population Control. Her statements taken in Spartanburg South Carolina indicate there is no meaningful crisis. See 8/25/15 Court Transcript from Spartanburg meeting. Under these circumstances that "refugees' may not meet the legal definition of "refugees' as defined in the 1980 INA enacted by Congress.

81. That the Plaintiff has the right to rely that the Duties of the Governor and her executive office and agencies to perform their duties in accordance with the South Carolina Constitution and State Laws. The State Officials and Government must use due diligence in protecting the citizenry.

82. Upon information and belief, The Governor's public comment for keeping GITMO out of South Carolina: "We are absolutely drawing a line that we are not going to allow any

terrorists to come into South Carolina. "We're not going to allow that kind of threat. We're not going to allow that kind of character to come in," she continued, making it seem as though Obama would have them teaching youth sports or performing at the senior center on work release. "Without question, we are not going to allow South Carolina to become a magnet for terrorists to come here," "This is a slap in the face to the people in South Carolina who have sacrificed so much for this country," "To turn around and say that you are going to put these terrorists in our backyard. Governor Nikki Haley

83. The Plaintiff is informed and believes that should retaliation be made against him or his family or the local community for raising these legal issues (and he has a likelihood of success on the merits) he and his family would again suffer imminent harm.  Other jurisdictions with similar plans have seen increase in the rate of crime and rape and overburden on the system based on a failure of refugees to properly assimilate or to become self-sufficient.

84.  The Plaintiff is informed and believes The Federal Government through ORR and The State Plan requires translators for unending amounts of time, rather than encouraging English. This is contrary to South Carolina public policy and SC Code of Laws and INA represents a financial exploitation of the system financially of monies needed to accomplish the comfortable and safe resettlement of refugees. He is informed and believes that if the State Plan and ORR sponsored Directives are not enjoined, the Plaintiff and his family require injunction to protect the Plaintiff from irreparable harm and future harm and damage.

**COUNT ONE Violation of The Take Care Clause, Art. II, § 3, Cl. 5**

85. The allegations in paragraphs 1-84 are reincorporated herein.

86. The DHS Directive violates the President's constitutional duty to "Take Care that the Laws be faithfully executed." *U.S. CONST. art. II, § 3, cl. 5.*

87. The Supreme Court has made clear that the Take Care Clause is judicially enforceable against presidential invocations of the dispensing power. See, e.g., *Kendall v. United States, 37 U.S. (12 Pet.) 524, 612-13 (1838); Angelus Milling Co. v. Comm'r of Internal Revenue, 325 U.S. 293, 296 (1945).*

88. The Take Care Clause limits the President's power and ensures that he will faithfully execute Congress's laws; not rewrite them under the guise of executive "discretion." In this case, the President admitted that he "took an action to change the law." The Defendants could hardly contend otherwise because a deferred action program with an acceptance rate that rounds to 100% is a de facto entitlement; one that even the President and OLC previously admitted would require a change to the law.

89. The Defendants have usurped proper Congressional authority under the S.C. Constitution by undermining due process of law by attempting to legislate by writing policy and directives and implementing it as "law."

90. Congress has provided that it is illegal for undocumented immigrants to be in the United States and has required the executive branch to remove those individuals. *Under 8 U.S.C. § 1225*, every individual who is not present in the United States legally "shall" be "inspected" by immigration officers; and if the officer determines that the individual is not clearly and beyond a doubt entitled to be admitted, the individual "shall be detained" for removal proceedings. Id. *§ 1225(a)(1), (a)(3), (b)(2)(A)*. This imposes a mandatory duty on the executive branch. *See Crane v. Napolitano, 2013 WL 1744422*, at * 8, No. 3:12-cv-03247-O (N.D. Tex. Apr. 23, 2013) (holding that *8 U.S.C. § 1225* imposes a mandatory duty and explaining that "[t]he Supreme Court has noted that Congress's use of the word 'shall' in a statute imposes a mandatory duty on an agency to act." *(Fed. Express Corp. v. Holowecki,*

*552 U.S. 389, 399 (2008)).* This mandatory duty extends to the removal of any undocumented immigrant present in violation of federal law, unless Congress provides a specific exception. See *8 U.S.C. §§ 1182, 1227(a)(1), 1229b, 1254* (setting standards for inadmissibility and categories for deportability, along with limited statutory exceptions, such as cancellation of removal and temporary protected status).

91. At least for the 4 million people who will benefit from the DHS Directive, Congress has taken several steps to curtail the reunification of undocumented immigrants and their documented family members. The undocumented parent of a U.S. citizen or legal permanent resident generally can stay in the United States only by (i) waiting until their child turns 21, (ii) leaving the country, (iii) waiting 10 more years, and then (iv) Obtaining a family-preference visa from a U.S. consulate abroad. See *8 U.S.C. §§1151(b)(2)(A)(i), 1182(a)(9)(B)(i)(II), 1201(a), 1255.* The Defendants cannot faithfully execute the law by directly contravening Congress's objectives.

92. In accordance with the President's unilateral exercise of lawmaking, his Secretary of the Department of Homeland Security ("DHS") issued a directive that purports  to  legalize the  presence of approximately 40% of the known undocumented-immigrant population, and affords them legal rights and benefits. See Memorandum from Jeh Johnson Charles Johnson, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children and with Respect to Certain Individuals Whose Parents are U.S. Citizens or Permanent Residents (Nov. 20, 2014) ("DHS Directive") (attached as an exhibit).  That unilateral suspension of the Nation's immigration laws is unlawful, unconstitutional and extremely risky to America Public health and Public Safety, in direct violation of the take Care Clause.  Only this Honorable Court's immediate intervention can

protect the Plaintiffs from dramatic and irreparable harm

93. Accordingly, the Defendants' actions violate the Take Care Clause. http://www.senate.gov/civics/constitution_item/constitution.htm

94. The Plaintiff is informed and believes that this action and omission caused him harm and damage and the potential for imminent harm to the Plaintiff 's person and property.

**COUNT TWO: Violation of the APA, *5 U.S.C. § 553***

95. The allegations in paragraphs 1-94 are reincorporated herein.

96.  The APA requires this Court to hold unlawful and set aside any agency action taken "without observance of procedure required by law." *5 U.S.C. § 706(2)(D).*  DHS is an "agency" under the APA. *5 U.S.C. § 551(1).*   The DHS Directive are  "rules" under the APA. *5 U.S.C. § 551(4).*

97. With exceptions that are not applicable here, agency rules must go through notice-and-comment rulemaking. *5 U.S.C. § 553.*

98. The Defendants promulgated and relied upon the DHS Directives without authority and without notice-and-comment rulemaking. It is therefore unlawful.  This was not done in this case.

99. The Plaintiff is informed and believes he is in imminent harm from these acts and omissions.

**COUNT THREE: Violation of the APA, *5 U.S.C. § 706***

100. The allegations in paragraphs 1-99 are reincorporated herein.

*101.* The APA requires this Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *5 U.S.C. § 706(2).*

102. The DHS Directives purport to create legal rights for millions of undocumented immigrants. And it does so by rewriting the immigration laws and contradicting the priorities adopted by Congress. See, e.g., ¶¶ 75-76, supra.  The Brownsville Lawsuit.

103. As such, the DHS Directives violate the aforementioned provisions in *5 U.S.C. § 706*, and it is therefore unlawful.

**COUNT FOUR: Abandonment and failing to enforce Immigration Law by the U.S. Executive Office and the President and the Governor's Office of South Carolina and Governor Nikki R. Haley.**

104. The allegations in paragraphs 1-103 are reincorporated herein.  See above pertaining to ADA and INA, as well as other causes of action in accordance with the specific pleadings in the Brownsville Lawsuit as it applies to South Carolina.   Main issue is the Governor has taken 2 contrary positions on this issue, leaving the taxpayers without an adequate remedy, except to petition this Honorable Court for Redress.  The Plaintiff and Citizens of South Carolina are caught between a rock and a hard place due to acts and omission by Executives;

**COUNT FIVE: ESTABLISHMENT CLAUSE (separation of church and state prohibiting government from forcing religion)**

105. The allegations in paragraphs 1-104 are reincorporated herein.

106. The first of the First Amendment's two religion clauses reads: "Congress shall make no law respecting an establishment of religion … ." Note that the clause is absolute. It allows no law. It is also noteworthy that the clause forbids more than the establishment of religion by the government. It forbids even laws respecting an establishment of religion. The establishment clause sets up a line of demarcation between the functions and operations of the institutions of religion and government in our society. It does so because the framers of the First Amendment recognized that when the roles of the government and religion are

intertwined, the result too often has been bloodshed or oppression. As written, the First Amendment applied only to Congress and the federal government. In the wake of the Civil War, however, the 14th Amendment was adopted. It reads in part that "no state shall … deprive any person of life, liberty or property without due process of law… ." In 1947 the Supreme Court held in Everson v. Board of Education that the establishment clause is one of the "liberties" protected by the due-process clause. From that point on, all government action, whether at the federal, state, or local level, must abide by the restrictions of the establishment clause.

107. The government may neither compel nor prohibit religious exercise. The Establishment Clause side of the coin says that government may not prescribe religious exercise; the Free Exercise side says that government may not proscribe, disfavor or otherwise punish or prevent religious exercise voluntarily chosen by the people.

108. The Government through the intimate relationships with the various non-profit "religious charities" clearly violates the Plaintiff's state and federal rights.

109. This cause of action goes to the Non-Profit Defendants that are violating the separation of Church and State.   In fact despite the mandate not to "proselytize." The Defense representing the Non Profit Lutheran Services Carolinas and World Relief has cited various scripture verses in their defense, yet they act contrary to their own charge.   The government must not direct the actions of the "religious corporations" and non-profits by mandating that they not proselytize and mandating an acceptance government social agenda by the government giving money arbitrarily.     This is why it's so important to not have Government funding a "religious corporation".

**COUNT SIX: RIGHT TO EQUAL PROTECTION UNDER THE LAW**

110.  The allegations in paragraphs 1-109 are reincorporated herein.

111.  The SC State Constitution Article 1 Section 3 …. Without due process not shall any person be denied Equal Protection of the laws.    The Plaintiff relies on the SC State Constitution and his equal protection rights therein specifically and clearly stated and that these directives are in direct violation of a very private right he has.

112.  The Freedom of Speech, Freedom of Religion The right to Privacy Rights against unreasonable search and seizure.  The Plaintiff is informed and believes his rights have been violated by this Plan and the directives circumventing due process.


**COUNT SEVEN: "Take Care" Clause of SC Constitution**

113.  The allegations in paragraphs 1-112 are reincorporated herein.

114.  The Taking Clause as to the State Constitution and Governor Haley As Governor and a Plaintiff representing South Carolina in the Brownsville Texas Lawsuit she was bound by the rulings and orders by that Court's decisions.  After the orders she entered into a "State Plan" without the required input from the legislature to review and pass it and in direct violation of the Federal and State Laws and Judge Hanen's rulings and orders.

115.  The SC State Constitution Article 1 Section 3. Without due process not shall any person be denied Equal Protection of the laws.    The Plaintiff relies on the SC State Constitution and his equal protection rights therein specifically and clearly stated and that these directives are in direct violation of a very private right he has.

**COUNT EIGHT: No Legislating by Executives**

116.  The allegations in paragraphs 1-115 are reincorporated herein.

117.  The SC Constitution Section 8 the legislative and Judicial and Executive shall be separate

and distinct from each other and no shall over-step authority.   **Article 1 section 8 section 9**

118.  The new section 10 "The right of the People to be secure of their persons…. Unreasonable invasions of Privacy…. http://www.scstatehouse.gov/scconstitution/SCConstitution.pdf

### COUNT NINE: Violation of Privacy State and Federal

119.  Re-allege all paragraphs 1-118 as they relate to each agency both Federal and state and how at the directives of the executives and DHS and there ORR have violated Federal, State Law and Judge Hanen's rulings;

### COUNT TEN: Federal Taking Clause

120.  Re-Allege all paragraphs 1-119 as if fully restated herein

121.  The United States Constitution sets out Section 8 paragraphs 1-17 the specific national powers.  Those powers not enumerated there are reserved powers for the state. Also in Article 1 section 8 paragraphs 18 it states that Congress shall have authority to make laws that are necessary and Proper *McCullough v. Madison 17 U.S. 316, 4 Wheat. 316, 4 L. Ed. 579 (1819)* The US Constitution goes on to say that in Article 2 section 3 Upon Information and belief, Section 8 USC Section 1373 specifically requires the Federal Government to provide citizen and immigration information about any individual in response to inquires by a federal, state or local government or agency or law enforcement.   The Government has failed to operate in its authority as set out in the above-referenced paragraphs.   New violations are coming to light each week; the Plaintiff reserves his right to add new claims.

122.  *USCS Const. Art. II, § 3… Take Care Clause*   Both in SC and US Constitutions; The President must "Take Care" that the laws be faithfully executed.   This clause in the

Constitution imposes a duty on the President to take due care while executing the laws and is called the Take Care Clause, also known as the Faithful Execution Clause.

**COUNT ELEVEN: State and Governor**

123. Re-allege all paragraphs 1-136 as if fully restated herein

124. Governor failed to notify the Legislature and accordingly operated outside of her Authority

125. As stated in the above paragraphs herein, the Governor violated the following provisions of the South Carolina State Constitution:

126. Article 3 Section 34, Article 3 Section 35, and Article 3 section 36 as to Governor Haley and General Fund.  She circumvented this whole section; SC Constitution Article 4 Section 1 (Executive Department).

127. As the Chief Magistrate of South Carolina, she has duty to faithfully execute Article 4 Section 15 Faithful Execution of the laws to this end the Attorney General shall assist and help the governor faithfully execute and enforce the laws.

128. The duty of state officers to give information to the governor is a crucial component of due process. All state officers agencies within executive branch shall when required by governor relating to duties and functions including itemized accounts and receipts and disbursements. This was not done in regard to the "Directives" and "state Plan" and has harmed the Plaintiff and will continue to harm and damage him.

129. Article IV Section 18 Duty Of Governor To Give Information To General Assembly

130. If she was to put the state plan in front of legislature and called it a "bill" or joint venture" it would need to be would have to go through all the requirements in legislature to pass it.

131. Article 4 Section 21; Article 6 Section 4, 5 6 and 8 (part of this is OATH of OFFICE).  Upon information and belief, the Seal on the State Plan has not been sealed with

The Great Seal and counter signed with the Secretary of State (the State Plan 2016 does not appear to have The Great State seal of South Carolina.  The State Plan cannot be simply "rubber stamped"...   All of these sections have been violated causing Plaintiff harm and damage and imminent harm and damage to his person and property.

132.  The Comptroller General... (does audits and makes sure budget is being done)  The Governor sidestepped this process; in violation of her oath to faithfully execute the laws of the State of South Carolina.

133.  *S.C. Constitution Article 8 Section 14*   General Law Provisions does NOT allow for Governor Haley to ignore or set aside The Freedoms guaranteed every person;

134.  *S.C. Constitution Article 12*--Section 1 This is crucial to Public Interest.  Matters of Public Concern the general assembly to provide welfare ad Public Safety Matters of Public Concern This is what gives the Plaintiff Standing to bring this action.

135.  The Governor doesn't have the power and Neither can the SCDSS-- both have gone too far and extended their Authority -- the General Assembly must authorize SCDSS to add onto expanded duties-.

136.  *S.C. Constitution Article 17* miscellaneous matter section 1-2 claims against the state   section 6 removal

137.  Special election for bonding municipality General Assembly holding a Petition of a Majority of the Freeholders (this would be for refugee resettlement) duly qualified for voting and paid taxes -- in and election to issue such bonds...

138.  For when setting up or annexing  ie.  Having a Refugee Resettlement should be required for a municipality --- notice to local community must be put on notice --

139.  Constitution  gives  broad  powers.  Greer  BMW  plant--  excepting  these  from  the

requirements... but Refugee Resettlement is arguably a different story must have notice...7.B   section 10 laws now enforced -- *S.C. Constitution Section 11* -- no laws change-- its here by declared and by laws in effect--shall continue as valid. Laws inconsistent with constitution that is applicable because Governor has not faithfully executed the laws.

140. *S.C. Constitution Article 7; Section 12*   Continuity of governmental operations during enemy attack--

141. *S.C. Constitution Article 17 section 15* doesn't give any right for Government to do what they did in this case.

142. Attached is each Article and Section cited in the South Carolina State Constitution. The SC Constitution Section 8 the legislative and Judicial and Executive shall be separate and distinct from each other and no shall over-step authority.

143. The new section 10 "The right of the People to be secure of their persons…. Unreasonable invasions of Privacy.  The Plaintiff has a fundamental right to privacy and that his person or property will not be harmed.

144. The Plaintiff is informed that the above-referenced Sections of the South Carolina Constitution have been violated causing him harm and damage and imminent harm and damage;

**COUNT TWELVE: The Declaration of Rights SC Constitution**

145. Re-allege all paragraphs 1-108 as if fully restated herein

146.   Article 1 SECTION 1. Political power in people. All political power is vested in and derived from the people only, therefore, they have the right at all times to modify their form of government. (1970 (56) 2684; 1971 (57) 315.) Editor's Note The present provisions of this section are identical to former Section 1 of Article I as it existed prior to the 1971 revision. For similar provisions in Constitution of 1868, see Const 1868, Art I,

Section 1. SECTION 2. Religious freedom; freedom of speech; right of assembly and petition. The General

Assembly shall make no law respecting an establishment of religion or prohibiting the free exercise thereof, or

abridging the freedom of speech or of the press; or the right of the people peaceably to assemble and to petition

the government or any department thereof for a redress of grievances. (1970 (56) 2684; 1971 (57) 315.)  The

Plaintiff's rights have been violated;

147. *USCS Const. Art. II, § 3… Take Care Clause*    **Both in SC, as well as US Constitution.**
The President must "Take Care" that the laws be faithfully executed.  This clause in the
Constitution imposes a duty on the President to take due care while executing and enforcing
the laws and is called the Take Care Clause, also known as the Faithful Execution Clause.

148. Article 3 Section 34 was violated;

149. Article 3 Section 35 was violated;

150. Article 3 section 36 as to Governor Haley and General FUND  (The Governor circumvented
this  whole  section).  SC  Constitution  Article  4  section  1  was  violated;
http://www.scstatehouse.gov/scconstitution/SCConstitution.pdf

151. Chief Magistrate of SC failed to oversee, execute and enforce Title 63 Code of Laws;  See
family law case from Beaufort County;

152. Article 4 Section 15 Faithful Execution of the laws to this end the ATTORNEY GENERAL
shall assist and help the governor shall not act contrary to the Take Care Clause;

153. The duty of state officers to give information to the governor..... all state officers adjacencies
within executive branch shall when required by governor relating to duties and functions
including itemized accounts and receipts and disbursements

**COUNT THIRTEEN: Duty of Governor to give information to General Assembly**

154. Re-allege all paragraphs 1-144 as if fully restated herein

155. Article IV Section 18

156. If she was to put the state plan in front of legislature and called it a "bill" or joint venture" it would need to be would have to go through all the requirements in legislature to pass it

157. Article 4 Section 21, Article 6 Section 4, 5 6 and 8  ( part of this is OATH of OFFICE)

158. Article 12--SECTION 1 THIS IS Crucial to Public Interest.

159.  Matters of Public Concern the general assembly to provide welfare ad Public Safety Matters of Public Concern This is what gives the Plaintiff Standing to bring this action.

160. The Governor doesn't have the power and neither can the SCDSS; both have gone too far and extended their Authority.  The General Assembly must authorize SCDSS to add onto expanded duties-.

161. Article 17 miscellaneous matter section 1-2 claims against the state   section 6 removal

162. Special election for bonding municipality General Assembly holding a Petition of a Majority of the Freeholders (this would be for refugee resettlement) duly qualified for voting and paid taxes -- in and election to issue such bonds; This was not done properly;

163. For when setting up or annexing... Having a Refugee Resettlement should be required for a municipality --- notice to local community must be put on notice –This was not done properly;

164. Constitution gives broad powers. Greer BMW plant-- excepting these from the requirements... but Refugee Resettlement is a different story must have notice;

165. 7.B   section 10 laws now enforced -- section 11 -- no laws change-- its here by declared and by laws in effect--shall continue as valid;

166. Laws, policies, and proto-type agreements inconsistent with Constitution shall cease. This is

demonstrative that Nikki Haley is NOT faithfully executing and enforcing the laws of the State of South Carolina

167. Article 17 Section 12    Continuity of governmental operations during enemy attack;

168. Article 17 sections 15 doesn't give any right for Government to do what they did in this case.

169. Attached is each Article and Section cited in the South Carolina State Constitution. http://www.scstatehouse.gov/scconstitution/SCConstitution.pdf

**COUNT FOURTEEN: Equitable, Injunctive Writ of Mandamus and other relief to declare the State Plan and Other Directives Null and Void**

170. Re-allege all paragraphs 1-169 as if fully restated herein

171. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

172. The INA establishes the Office of Refugee Resettlement, within the Department of Health and Human Services. 8 U.S.C. § 1521

173. The Plaintiff is informed and believes that he filed a Temporary Motion for Restraining Order and a Memorandum of Law on why this Equitable Relief is necessary.   He incorporates his Complaint and Motion for initial Restraining Orders and Injunctive Relief in this Amended Complaint as if fully re-stated under Rules Federal Rules 57, 65, and 66 and a Writ of Mandamus request;

174. The Exodus Court Ordered that title III Standing was appropriate.   The Plaintiff in our case has similar standing claims, particularly in light of the Brownsville Texas Lawsuit.

175. In Exodus case:  "Under the State Plan, the federal government's Office of Refugee Resettlement provides monies to the State to be passed through the State for direct

assistance to refugees. *(ECF No. 41-6 ¶ 4).*[1] Federal funds are also provided to states with approved state plans to pass through to local resettlement agencies such as Exodus to provide various social services, including "cultural integration training, job skills training, adult English language training, and anything that can help the refugees adapt to their new communities, become employable, and become financially viable without public assistance." *(Id. ¶ 6; ECF No. 41-6 at 34; 45 C.F.R §§ 400.154, 400.155).* The President under *8 U.S.C. § 1158(b)(1)* the authority to determine the number of refugees to be accepted to the United States yearly. Furthermore, under *8 U.S.C. § 1157(a)(2)* determined that approximately 85,000 refugees will receive admittance into the United States in 2016, of those 85,000, 10,000 are Syrian Refugees. Policy dictated by the Office of Refugee Resettlement (ORR) and the Bureau of Population Refugee and Migration (PRM) states that admittance of refugees to the United States takes 18-24 months respectively. Under the policy enforced through the ORR and the PRM, utilizing their parameters of 18-24 months, would only allow 4,722 refugees eligible for entry into the United States. Comes the Plaintiff Bilbro, FY 2016 Refugee Resettlement Plan, Attorney General, Alan Wilson approved, operates from the South Carolina Department of Social Services (SCDSS), in Columbia, South Carolina. Refugee program services and benefits are available statewide based on eligibility. Policy adopted by the State of South Carolina, thus creating unconstitutionality on its face while circumventing the limits set forth in the ORR plan. Under the State Plan, the federal government's Office of Refugee Resettlement provides monies to the State to be passed through the State for direct assistance to refugees. *(ECF No. 41-6 ¶ 4).* Federal funds are also provided to states with approved state plans to pass through to local resettlement agencies such as the Voluntary Resettlement Agencies

(VOLAGs), such as the case in South Carolina.  The agencies of choice are the Lutheran Services Carolinas in Columbia, South Carolina, and the World Relief in Spartanburg, South Carolina.  45 CRF Part 400 dictates the funding for the refugee resettlement *(§ 400.5(i)(3))* in South Carolina in accordance with all Federal Statutes and regulations. Under 45 CRF *400.5(i)(4))* South Carolina will amend the State Plan to comply with ORR standards, goals and priorities as needed.

176.  In accordance with ORR and the South Carolina State Plan for the RR, objectives consist of Refugee Cash Assistance, the provision of cash payment to eligible refugees, modeled after the Family Independence through the use of the South Carolina's Temporary Assistance Needy Families.  Provisions further include the Refugee Medical Assistance to eligible refugee populations and Refugee Social Services, providing employment assistance, case management, and other services.  Work registration is required in order to receive said assistance referenced above in accordance with the approved SCSP, which is in direct contradiction of excluding any benefits to refugees if they do not find work found on page 13 allowing refugee exemptions from work registration. (SEE EXHIBIT SOUTH CAROLINA RR STATE PLAN 2016).

**FOOTNOTES**

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS BROWNSVILLE DIVISION**

Case:                                    No.                                    1:14-cv-254

A. That On November 20 and 21, 2014, President Barack Obama announced a series of administrative reforms of immigration policy, collectively called the Immigration Accountability Executive Action.1 The centerpiece of these reforms is an expansion of the current Deferred Action for Childhood Arrivals (DACA) initiative and the Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA) initiative for the parents of U.S citizens and lawful permanent residents who meet certain criteria.2

Together, these initiatives could provide as many as 5 million immigrants with temporary relief from deportation. Moreover, DAPA and expanded DACA are expected to keep families united, but also to increase U.S. gross domestic product, increase tax revenue, and raise wages. Obama has now announced a fast track of refugees even ignoring any vetting as it is physically impossible to vet as many refugees as he has indicated he want to fly over into America. His will have a large and long standing negative effect on the taxpayers, as well as being a risk to the citizens. He announced an Increase in the Refugee Program, contrary to the CIA and FBI recommendations. SEE EXPERT AFFIDAVITS

B. On February 16, 2015, Brownsville, Texas federal Judge Andrew Hanen, of the U.S. District Court for the Southern District of Texas, temporarily enjoined DAPA and the planned expansion of DACA pending a higher court's contrary order or a trial on the merits. Highlights of the court's reasoning included:

C. Texas and South Carolina have standing to bring this lawsuit because DAPA and expanded DACA will create a new class of individuals eligible to apply for state-subsidized driver's licenses, car registrations, car insurance or underinsurance, work permits, green cards and voting rights which would impose additional processing and issuance costs on the state.

D. Judge Hanen, also, based his ruling on narrow procedural grounds —which the Government did not comply with certain technical requirements under the Administrative Procedure Act (APA), including notice-and- comment rulemaking. In reaching this conclusion, Judge Hanen found DAPA and expanded DACA to be substantive rules subject to notice-and-comment procedures, rather than general statements of policy. However, as DHS pointed out, the expanded DACA and DAPA initiatives are policies, under which DHS must decide on a case-by-case basis whether to grant a particular individual's request. DHS national procedures for officers who review DACA and DAPA claims specifically allow prosecutorial discretionary denials. The Government procedures allow for granting or permitting denials and the procedures provide a form with a box permitting denials solely on the basis of discretion—even where eligibility guidelines are met, as well as another box permitting denial where a requestor "do [es] not warrant a favorable exercise of prosecutorial discretion because of national security or public safety concerns. Copy of Courts Order affixed hereto as Exhibit. The Plaintiff is directly impacted by this financial loss.

E. On May 26, 2015, a divided panel of the Fifth Circuit Court of Appeals denied the request for an emergency stay of the preliminary injunction, with the result that The District Court the hold on implementation of DAPA and expanded DACA remained in place while the Fifth Circuit considered the appeal of the preliminary injunction itself.

F. On November 9, 2015, the Fifth Circuit Court of Appeals upheld the district court's order granting the preliminary injunction. Stating: The states sued to prevent DAPA's implementation on three grounds.

G. First, they asserted that DAPA violated the procedural requirements of the APA as a substantive rule that did not undergo the requisite notice-and- comment rulemaking. *See 5*

42

*U.S.C. § 553.* Second, the states claimed that DHS lacked the authority to implement the program even if it followed the correct rulemaking process, such that DAPA was substantively unlawful under the APA. *See 5 U.S.C. § 706(2)(A)–(C).* Third, the states urged that DAPA was an abrogation of the President's constitutional duty to "take Care that the Laws be faithfully executed." *U.S. CONST. art. II, § 3.*

H. The district court held that Texas has standing. It concluded that the state would suffer a financial injury by having to issue driver's licenses to DAPA beneficiaries at a loss. *Dist. Ct. Op., 86 F. Supp. 3d at 616–23.* The Plaintiff is informed that he and South Carolina and the tax paying citizens will suffer similar losses and perhaps even more once this is investigated and Discovery is permitted.

I. *TEX. TRANSP. CODE § 521.142(a)* ("An applicant who is not a citizen of the United States must present . . . documentation issued by the appropriate United States agency that *authorizes the applicant to be in the United States* before the applicant may be issued a driver's license." (emphasis added)).

J. *TEX. LAB. CODE §207.043(a)(2)* (emphasis added); *see also 26 U.S.C. 20 § 3304(a)(14)(A)* (approval of state laws making compensation not payable to aliens unless they are "lawfully *present* for purposes of performing such services" (emphasis added)).

K. The majority of the Fifth Circuit Court of Appeals accepted the lower court's findings that Texas has standing to bring this lawsuit based on the additional costs it would incur to issue driver's licenses, and licensed documents to beneficiaries of expanded DACA and DAPA.

L. The court acknowledged that judicial review is unavailable under the APA where a matter is committed to agency discretion and that the government's immigration enforcement priorities fall squarely within this category; nonetheless, the majority also found that the plaintiff states were likely to prevail on their claim that the federal government should have pursued notice-and-comment rulemaking because DAPA and expanded DACA determinations are non-discretionary. In addition, the majority held that the new deferred action initiatives are arbitrary and capricious because the federal government did not have authority to promulgate them under the Immigration and Nationality Act.

M. Similarly in the Plaintiff's instant case, the Plaintiff has an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id.* at 1147. "When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Massachusetts v. EPA, 549 U.S. 497, 518 (2007).* "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc., 547 U.S. 47, 52 n.2 (2006).*

**Federal Cases that apply and are on point as to why the Federal Government cannot give directives that leave the States and local governments and taxpayer between a "rock and a hard place":**

*National Federation of Independent Business v. Sebelius*, 567. U.S. (2012), 183 L. Ed. 2d 450, 132 S.Ct. 2566

In the above referenced case, the facts surrounding the ACA's Medicaid Expansion was unconstitutional, threatening the non-compliant states with monetary losses of their Medicaid fund, which the court believed amounted to a "gun to the head" thus determining that the ACA's Medicaid Expansion is coercive. The Roberts plurality and the joint dissent prohibits Congress from directly commandeer[ing] the legislative process of the states by forcing them to enact and enforce a federal program.

*Exodus v Pence*

In this case the Court ruled that Exodus did have standing and that the Court had jurisdiction, venue, cause of action

This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and § 1343.

Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**WHEREFORE the Plaintiff prays for the following relief:**

1. That the Plaintiff seeks all of the relief asked for in paragraphs 1- 177 and all of the Counts are restated and prayers for relief re-alleged as if fully restated herein.

2. Temporary and Permanent Injunction and Restraining Order of the Refugee Resettlement State Plan 2016, and the Federal Plan based on escalating terrorist attacks on American soil and clear and supporting evidence that these Federal and State Plans cannot be properly or lawfully implemented; or until all the allegations and serious concerns for the imminent danger to the Plaintiff can be addressed and a full accounting of funding can be provided to the Court and Plaintiff. That any Injunction be without requirement for security;

3. That the State Plan 2016 be stopped due to an inflow of "ethnic" clients (see State Plan page 4) were not projected" and the local Communities in South Carolina cannot absorb the financial burden or risk of public health and public Safety and it creates and opportunity for subversive and hostile exploitation of the taxpayer by potential invaders who have no plans to assimilate.

4. The Court Order any investigations into these matters and require the Child and Sponsor in the Beaufort County Family Court to be ordered to appear in this Court;

5. That a full Discovery disclosure and transparency be accounted for of what "private" services are offered" to the "clients" in the state plan and how that is funded;

6. That the Court find the "non-Proselytizing" mandate in this policy be am imminent breach of a vested protected legal right that he has as the Plaintiff, as well as that these Directives and State Plan 2016 was implemented without Authority and shod be immediately enjoined;

7. That all the requests for relief above stated are incorporated in this prayer for relief as if fully restated;

8. That the Court find there is an Important Public Interest involved in this case for resolution and that the program cease until this Important Public Interest can be resolved and projections can be made in accordance with South Carolina Law;

9. For such other and further relief as may be Equitable and Just and Proper considering the threat to the State and Federal Defendants and their agents and employees and take into account South Carolina Treasury and the Richland County Tax revenues, personal tax finances, the injury to protected legal rights of the Plaintiff, physical harm and safety for himself and his family, abuse of the Plan which potential abuse of The Plan that incentivizes criminal and misrepresentations by refugees in support of them.    He seeks to stop it immediately;

*Lauren Martel*
_____
LAUREN MARTEL
Post Office Box 23101
Hilton Head, South Carolina 29925
(843) 298-3831

Attorney for Plaintiff

Hilton Head Island, South Carolina
 June 20  2016

Lauren Martel
Attorney For Plaintiff